Chancellor Mathews
delivered the decree of the courts
Tliis is one of those cases in which this court is au-thorised to exercise that extraordinary jurisdiction vested in it, lor setting up, or reviving deeds or contracts lost or mislaid on sufficient proof of their having existed. In this case it appears to be. acknowledged by all the parties interested, that articles for a settlement were entered into previous to the marriage of George Cogdell the father of complainant, with his first wife; and which is also shewn by a bond entered into by George Cogdell to Joseph White referring to such articles, hearing even date with the bond, for securing 10,000i. old currency, to his then intended wife Hannah Screven; and which is further shewn by a deed from George Cogdell to his second, wife and to John Cogdell conveying lands in trust for the children of the first marriage. The first question is, whether the *455 evidence, offered is sufficient to substantiate, the existence, of the deed now attempted to be set up? We think it is; for it does not often happen, that the. proof in similar cases can be so well authenticated as is done in the pve-sent case. In the last term an application being made to this court to set up a will said to be the last will of Mrs. Ami Berwick, but which was lost, (in opposition to a will produced) on an issue directed for atrial at law, the jury sc.t up and confirmed the will which was lost, as the last will, on the. positive parol evidence of one witness, of the existence, and contents of such will; and on the circumstantial parol evidence of other persons; which verdict was confirmed by this court. The present case is a much stronger one, as the proof goes much further in the support of the articles of marriage, settlement.

OCTOBER, 1795.

The. 2d question is, what proportion and what estate the children of that marriage were entitled to by virtue of the marriage settlement ? On this point we have no certain guide for our government. The bond goes no further than a provision for the. wife; but the deed from George, Cogdell and his second wife to John Cogdell goes to a provision, as well for the surviving child, as for the representatives of the two deceased children. We must tli ere fore have recourse to a former decision in this court, on a point nearly similar to this, as the best possible guide for a decision in this case. We mean the case of Wragg and others vs. Mathews and others; the words of the court in delivering their opinion in that case were as follows: This release, must be looked upon as drawn by the direction of Mr. Wragg, and must be considered as his exposition of the deed of 1711. It shews clearly what was his construction of that deed; and he being a principal party in the transaction, best knows what was the intention of all the parties; he certainly best knew what was his own intention. Here then is his declaration, that his daughter being the only issue of his former wife, was entitled to the provision made, by tim deed of 1741, for the issue of the marriage,” in the principal case the deed from George Cogdell and Ids second wife contain these words: “Whereas upon the *456 marriage of aforesaid George Cogdell with Hannah his, former wife, the sum of 10,000i. being by deed duly executed was by him G. Cogdell settled upon such child or children as should bo born of that marriage: And whereas the aforesaid G. Cogdell had three children by the aforesaid Hannah his wife, that is to say Elizabeth, now living, and Charles and Mary, who are dead, and whereas for the better securing the payment unto the aforesaid Elizabeth his daughter, as well as to the representatives of the aforesaid Charles and Mary, his deceased children,” &c. On the same principle then, that the case we have referred to was decided, so we think ought the present, namely for want of better information, wo must resort to the exposition and opinion of the principal party to the former deed, as expressed by him in the latter deed, as he must have known what was the intention of all the parties to the first deed. From hence tiie decision is rendered easy and unembarrassed, as we have only to pursue the words of the, latter deed, which speaks plainly the meaning ami intention of the first deed, which li as been lost. But whether the legal representatives of Charles who arrived at full age, but w'lio died before his father and unmarried, w’ere to take his portion under the statute of distributions, or whether the deed being intended as a provision for the children of the marriage ought to be construed according to the usual tenor of marriage settlements, and the distribution consequently confined to the children of the marriage, may be made another question. But we think there can be no doubt but that the death of any of the children of the marriage, without children and before a division of the estate settled, vested a right of survivorship in the other child or children, and their lineal descendants, exclusively of collateral representatives, not contemplated by the deed itself; for if in this case a contrary construction was to obtain, the consequence would be that the father of Charles would have been entitled to his distributive share absolutely, which lie might have given to the children of the second marriage, to the injury of the children of the first marriage; especially too as the estate flowed wholly from the *457 mother. This surely never could have been the intention of the parties to the deed: it evidently was not the construction or intention of tho father, G. Cogdell, for he never made any claim to it, although he survived Charles his son several years: And because in the latter deed, executed after the death of Charles, lie recognises tho right of Ms children to the whole ICkOOOZ. and makes that deed for the better securing that sum.” Now had lie conceived that he had a rigid to Charles’s part, he would not have, entered into a new engagement for securing the whole sum. As the original estate settled was money, the real estate into which it has been in part changed must still by the well known rules of law be considered as money. But as the widow has claimed her dower in these lands? to be sure we cannot deprive her of it. It is therefore ordered and decreed that the defendant, G. Cogdell, the trustee under the deed of 1792, do dispose of the lands mentioned In the said deed, on a credit of one, two and three years, reserving thereout what shall fee allowed the widow of G. Cogdell for, her dower; and that he do pay so much of the. balance, together with the sums for which the negroes sold by him amounts to, as shall'make up the sum of !0,000Z. secured by the marriage settlement, with interest thereon from the death of G. Cogdell, in the manner following, namely, one half to the complainant E. Potts the surviving daughter, the-other half to be by him placed and kept at interest on good security, to be approved by the master, for the benefit of the children of Mrs. Johnston, the other daughter of aforesaid G. Cogdell? until they may be entitled to receive the same: deducting therefrom a reasonable sum for the value of a negro woman, carried away by ÍL Johnston the husband of Mrs. Johnston, belonging to the estate of G. ’Cogdell; and also the anual allowance of 1QZ. sterling per annum for the Lire of the- said negro, from the- time of her being carried away to the present time: And that the costs be paid out of ifce proceeds of the estate.
[]Ga examining the record of tbs court, the register sta - ied that the- only proceedings of reren! jn the ease of Legare *458 vs. Ash and others, (referred to by the court in the above case) to set up a will of Mrs. Ann Berwick, which was ah leged to be lost, in opposition to a written will which was produced, were examinations of witnesses, and the confir-¡nation of a verdict, on an issue directed by the court of chancery. The following are the entries:
Court of Chancery, lsi July, 1795.
Present chancellors Mathews and Rutledge. — Thomas Legare and wife vs. Mrs. Ash and others.
The bill and answer being read, five witnesses were examined viva voce in open court, and their testimony reduced to writing in memoriam rei perpetuam.
Tuesday 4th August, 1795. — This court having directed an issue at law, in nature of a writ of trespass and ejectment, devastavit vel non, and general Pinckney having presented a copy of the verdict found on such issue, — It was ordered, that the same be and is hereby confirmed; and that the evidence taken in this case, in memoriam rei perpetuam, together with the said verdict, be recorded; which verdict is as follows: We find for the plaintiffs, the lands in the declaration mentioned, with costs of suit. We also find that Ann Berwick, on or about the 10th day of November, A. D* 179S, made her will to the following purport and effect, to wit: She gave and bequeathed, &c. (the verdict proceeded to set forth in detail all the devises and bequests of the will, as proved to them by the witnesses) — And that of her said last will and testament she appointed Thomas Hones, E. Rutledge and T. Legare, executors; which will we find was duly and legally executed in the presence of three credible witnesses.
13th July, 1795. (Signed) Daniel Hall, Foreman.
We certify that on the trial' of the issue in the above-cause, the jury found the verdict above set forth.
(Signed) Thomas Waties,
Elihu Hale Bay.

To the honorable the judges of the court of equity.

See report of the trial of the issue above directed, by Mr. justice Bay, 1st vol. 457; under the title of Legare and wife vs. Ash and others. See also the important case of Havard vs. Davis, in the supreme court of Pennsylvania. 2 Binney’s Report’s, 406; also the case of Haines vs. Haines, 2 Vernon 441, and 7 Bacon’s abr. 320, title wills and testaments.]